## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | COMPLAINT AND DEMAND |
| Herman Tydell Hendrix | : | FOR JURY TRIAL |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| Auxilium Pharmaceuticals, Inc., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## COMPLAINT

Plaintiff, Herman Tydell Hendrix, by and through the undersigned counsel, through his Complaint, hereby alleges against Auxilium Pharmaceuticals, Inc., as follows.

## INTRODUCTION

1.     This case involves the prescription drug Testim®, which is manufactured, sold, distributed, and promoted by Defendant, Auxilium Pharmaceuticals, Inc. (hereinafter "Auxilium" or "Defendant"), as a testosterone replacement therapy.

2.     Auxilium misrepresented that Testim® is a safe and effective treatment for hypogonadism or "low testosterone" when, in fact, this drug causes serious medical problems, including life threatening cardiac events, strokes, and thrombotic events.

3.     Auxilium engaged in aggressive consumer and physician marketing and advertising campaigns for Testim®. Further, Defendant engaged in an aggressive "disease awareness" campaign to alert men that they might be suffering from "Low T."

4.  Consumers of Testim® were misled as to the drug's safety and efficacy, and as a result have suffered injuries, including life-threatening cardiac events, strokes, and thrombotic events.

## PARTIES

5.  Plaintiff, Herman Tydell Hendrix ("Plaintiff"), a resident of Tulia, Texas, suffered two strokes, a blood clot, transient myocardial ischemia ("TMI") and pleurisy in or about February of 2014 , due to his use of Testim®.  Plaintiff was 42 years old at the time he suffered these injuries and conditions.

6.  Defendant, Auxilium Pharmaceuticals, Inc., is a Delaware corporation which has its principal place of business at 640 Lee Road, Chesterbrook, Pennsylvania 19087.  Plaintiff avers that Defendant conducted business and derived substantial revenue from sales of Testim® within the State of Texas.

7.  At all times relevant to this Complaint, Defendant was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription testosterone replacement therapy drug sold under the name Testim® throughout the United States, including the State of Texas.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $150,000.00, exclusive of interest and costs, and because complete diversity exists between the parties, as Plaintiff

is a citizen of Texas, which is different from the states where Defendant is incorporated and has its principal place of business.

9.  This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

10.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(c) and because a substantial part of the events giving rise to Plaintiff's claims occurred in this jurisdiction.

## SUMMARY OF THE CASE

11.  This action is brought by Herman Tydell Hendrix, who was prescribed, supplied with, received, and applied the prescription testosterone replacement drug Testim®, which was tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, sold or otherwise placed in the stream of interstate commerce by Auxilium. This action seeks, among other relief, money damages for general and special damages sustained and to be sustained as a result the stroke suffered by Herman Tydell Hendrix, caused by or substantially contributed to by Defendant's conduct and product, Testim®.

12.  Defendant's wrongful acts, omissions, and fraudulent misrepresentations caused and/or were substantial factors in Plaintiff's injuries and damages.

13.  At all times herein mentioned, Auxilium was authorized to do business within Texas, the state of residence of Plaintiff.

14.     At all times herein mentioned, the officers and directors of Auxilium participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries, damages and losses suffered by Plaintiff.

15.     Plaintiff used Defendant's product, Testim®, as directed beginning on or about May, 2013 through September 29, 2013.   This complaint is filed within the applicable statute of limitations period.

<u>OVERVIEW</u>

16.     Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

17.     Auxilium coordinated massive advertising campaigns designed to convince men that they suffered from low testosterone. Auxilium orchestrated national disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The marketing campaigns included online media and promotional literature placed in healthcare providers' offices as well as distribution to potential testosterone users.

18.     The advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone.   These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone levels.

19.     Auxilium also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed and that conditions associated with normal aging could be caused by low testosterone levels.

20.     While running disease awareness campaigns, Auxilium promotes its product, Testim®, as an easy to use, topical testosterone replacement therapy. Auxilium contrasts its products' at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

21.     Auxilium convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Auxilium's promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

22.     What consumers received, however, were not safe drugs; instead, they received products which cause life threatening problems, including strokes, heart attacks and thrombotic events.

23.     Auxilium's marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of testosterone is safe for humans, even though Auxilium knew these claims to be false, and even though Auxilium had no reasonable grounds to believe them to be true.

24.     There have been a number of studies concluding that testosterone therapy causes a sudden increase in hematocrit, hemoglobin and estradiol, and associating its use with an increased the risk of heart attacks, strokes and thrombotic events. Auxilium knew or in

the exercise of reasonable care should have known that its product, Testim®, was defectively designed, unreasonably dangerous in normal use, and highly likely to cause injury or death, but it failed to provide adequate warnings about these known risks.

## FACTUAL ALLEGATIONS

25.     The Food and Drug Administration approved Testim® on October 31, 2002, for the treatment of low or no testosterone in adult males.   After FDA approval, Testim® was widely advertised and marketed by Defendant as a safe and effective testosterone replacement therapy.

26.     Testim® is a hydro-alcoholic gel containing testosterone.  Testim® is applied to the shoulders and upper arms.   Testim® enters the body through transdermal absorption.

27.     Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

28.      The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

29.      In men, testosterone levels normally begin a gradual decline after the age of thirty.

30.      Testim® may produce undesirable side effects to patients who use the drugs, including but not limited to, myocardial infarction, stroke, thrombotic events and death.

31.      In some patient populations, Testim® use may increase the incidence of myocardial infarctions and death by over 500%.

32.      Additionally, Testim® has been linked to several severe and life changing medical disorders in both users, and those who come into physical contact with users, or the unwashed

clothes of someone who applied testosterone. Patients taking testosterone may experience an enlarged prostate and increased serum prostate-specific antigen levels.

33. Defendant's marketing strategy beginning in 2002 has been to aggressively market and sell its products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendant knew or should have known to result from use of its products.

34. Auxilium's advertising programs sought to create the image and belief, by consumers and their physicians, that the use of testosterone was a safe method of alleviating their symptoms, had few side effects, and would not interfere with their daily lives, even though Defendant knew or should have known these to be false, and even though the Defendant had no reasonable grounds to believe them to be true.

35. Auxilium purposefully downplayed, understated, and outright ignored the health hazards and risks associated with using testosterone. Auxilium deceived potential testosterone users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

36. As a result of Auxilium's advertising and marketing, and representations about its products, men in the United States pervasively seek out prescriptions for testosterone. If Plaintiff had known the risks and dangers associated with testosterone replacement therapy, he would not have used testosterone and consequently would not have been subject to its serious side effects.

37.     Plaintiff was prescribed and used Testim®, as directed, for symptoms his doctor attributed to low testosterone as a result of Auxilium's advertisements, actions and inactions.

38.     After taking daily doses of Testim® beginning in approximately May of 2013, Plaintiff suffered two strokes and a blood clot on or about February 28, 2014.

39.     Prior to using Testim®, Plaintiff had no history of blood clots, strokes, or significant cardiovascular problems.

40.     Plaintiff has and will sustain significant general and special damages including medical expenses, lost wages, diminished economic horizons, and other items of recoverable damages for which he seeks maximum recovery as a matter of law.

41.     Had Auxilium properly disclosed the risks associated with the use of its product Testim®, Plaintiff would have avoided the risk of injury by not using testosterone replacement therapy at all.

## SPECIFIC FACTUAL ALLEGATIONS

42.     Plaintiff, Herman Tydell Hendrix, was approximately 42 years of age when he was prescribed and used Testim® for symptoms he and his physicians attributed to low testosterone.

43.     The Testim® he used caused physical and emotional impairment, which affected his personal and professional life.  These impairments included, but were not limited to the development of a stroke.  Prior to using Testim®, Plaintiff had no history of stroke or stroke symptoms.

## CAUSES OF ACTION

### COUNT I
### STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT

44.     Plaintiff incorporates by reference each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

45.     Testim® was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendant.

46.     When it left the control of Defendant, Testim® was expected to, and did reach Plaintiff without substantial change from the condition in which it left Defendant's control.

47.     Testim® was defective when it left Defendant's control and was placed in the stream of commerce, in that there were foreseeable risks that exceeded the benefits of the product and/or that it deviated from product specifications and/or applicable federal requirements, and posed a risk of serious injury and death.

48.     Specifically, Testim® was more likely to cause heart attacks, strokes, the development of deep vein thrombosis and/or pulmonary embolism, and death than other similar medications.

49.     Plaintiff used Testim® in substantially the same condition it was in when it left the control of Defendant and any changes or modifications were foreseeable by Defendant.

50.     Plaintiff and his healthcare providers did not misuse or materially alter the Testim®.

---

51.    As a direct and proximate result of the Plaintiff's use of Testim®, he suffered serious physical injury, harm, damages and economic loss, and will continue to suffer such harm, damages and economic loss in the future.

52.    Defendant is strictly liable to Plaintiff for designing, creating, manufacturing, distributing, selling, and placing Testim® into the stream of commerce, and for all damages caused to Plaintiff by his use of Testim® because the product was defective.

53.    Defendant's actions and omissions as alleged in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT II
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

54.    Plaintiff incorporates by reference each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

55.    Testim® was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiff.

56.    Defendant placed Testim® into the stream of commerce with wanton and reckless disregard for the public safety.

57.    Testim® was defective in design in that, when it left Defendant' control, the foreseeable risks of the product exceeded the benefits associated with its design, and it

_____

**Complaint and Demand for Jury Trial** - Page 10

was more dangerous than an ordinary consumer or ordinary healthcare provider would expect.

58.     The foreseeable risks associated with Testim's design include the fact that its design is more dangerous than a reasonably prudent consumer or healthcare provider would expect when used in an intended or reasonably foreseeable manner.

59.     Testim® was in an unsafe, defective, and inherently dangerous condition, which was unreasonably dangerous to its users and in particular, Plaintiff.

60.     Testim® was in a defective condition and unsafe, and Defendant knew, had reason to know, or should have known that Testim® was defective and unsafe, even when used as instructed.

61.     The nature and magnitude of the risk of harm associated with the design of Testim®, including the risk of suffering a heart attack, stroke, developing a deep vein thrombosis and pulmonary embolism, and death, is high in light of the intended and reasonably foreseeable use of Testim®.

62.     The risks of harm associated with the design of Testim® are higher than necessary.

63.     It is highly unlikely that Testim® users would be aware of the risks associated with Testim® through either warnings, general knowledge or otherwise, and Plaintiff specifically was not aware of these risks.

64.     The design did not conform to any applicable public or private product standard that was in effect when Testim® left the Defendant's control.

65.   Testim's design is more dangerous than a reasonably prudent consumer would expect when used in its intended or reasonably foreseeable manner as a testosterone replacement treatment.  It was more dangerous than Plaintiff expected.

66.   The intended or actual utility of Testim® is not of such benefit or to justify the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

67.   At the time Testim® left Defendant's control, it was both technically and economically feasible to have an alternative design that would not cause heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death or an alternative design that would have substantially reduced the risk of these injuries.

68.   It was both technically and economically feasible to provide a safer alternative product that would have prevented the harm suffered by Plaintiff.

69.   The unreasonably dangerous nature of Testim® caused serious harm to Plaintiff.

70.   As a direct and proximate result of the Plaintiff's use of Testim®, which was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendant, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

_____

## COUNT III
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

71.  Plaintiff incorporates by reference each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

72.  Defendant had a duty to warn Plaintiff and his healthcare providers of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death associated with Testim®.

73.  Defendant knew, or in the exercise or reasonable care should have known, about the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

74.  Defendant failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death, in light of the likelihood that its product would cause these injuries.

75.  Defendant failed to update warnings based on information received from product surveillance after Testim® was first approved by the FDA and marketed, sold, and used in the United States and throughout the world.

76.  A manufacturer exercising reasonable care would have updated its warnings on the basis of reports of injuries to men using Testim® after FDA approval.

77.  When it left Defendant's control, Testim® was defective and unreasonably dangerous for failing to warn of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

78.    Plaintiff used Testim® for its approved purpose and in a manner normally intended and reasonably foreseeable by the Defendant.

79.    Plaintiff and Plaintiff's healthcare providers could not, by the exercise of reasonable care, have discovered the defects or perceived their danger because the risks were not open or obvious.

80.    Defendant, as the manufacturer and distributor of Testim®, is held to the level of knowledge of an expert in the field.

81.    The warnings that were given by Defendant were not accurate or clear, and were false and ambiguous.

82.    The warnings that were given by the Defendant failed to properly warn physicians of the risks associated with Testim®, subjecting Plaintiff to risks that exceeded the benefits to the Plaintiff.  Plaintiff, individually and through his physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendant.

83.    Defendant had a continuing duty to warn Plaintiff and his prescriber of the dangers associated with its product.

84.    Had Plaintiff or his healthcare providers received adequate warnings regarding the risks associated with the use of the Testim®, he would not have used it.

85.    As a direct and proximate result of the Plaintiff's use of Testim® and Plaintiff's reliance on Defendant's representations regarding the character and quality of the product and Defendant's failure to comply with federal requirements, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT IV
## NEGLIGENCE

86. Plaintiff incorporates by reference each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

87. Defendant had a duty to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of Testim® into the stream of commerce, including a duty to assure that its product did not pose an undue risk of bodily harm and adverse events, and to properly warn of all risks, and comply with federal requirements.

88. Defendant failed to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Testim® into the stream of commerce in that Defendant knew or should have known that the product caused significant bodily harm and was not safe for use by consumers. Specifically, Defendant failed to properly and thoroughly:

    a.    Test Testim® before releasing it into the market;

    b.    Analyze the data resulting from the pre-marketing tests of Testim®;

    c.    Conduct sufficient post-market testing and surveillance of Testim®; and

    d.    Provide appropriate warnings for consumers and healthcare providers including disclosure of the known or potential risks or true or suspected

rates of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

89.    Despite the fact that Defendant knew or should have known that its product posed a serious risk of bodily harm to consumers, Defendant continued to manufacture and market Testim® for use by consumers and continued to fail to comply with federal requirements.

90.    Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above, including the failure to comply with federal requirements.

91.    It was foreseeable that Defendant's product, as designed, would cause serious injury to consumers, including Plaintiff.

92.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

93.    Defendant's conduct as described above, including but not limited to their failure to adequately design, test, and manufacture, as well as its continued marketing and distribution of the Testim® when it knew or should have known of the serious health risks it created and the failure to comply with federal requirements, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

94.    Defendant's actions and omissions as alleged in this Complaint demonstrate a flagrant disregard for human life, and willful and wonton conduct, which warrants the imposition of punitive damages.

_____

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT V
## BREACH OF EXPRESS WARRANTY

95.    Plaintiff incorporates by reference each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

96.    Defendant expressly warranted that Testim® was a safe and effective product for the treatment of low testosterone, and did not disclose the material risks that Testim® could cause heart attacks, strokes, deep vein thrombosis, pulmonary embolism and/or death.   The representations were not justified by the performance of Testim®.

97.    Members of the consuming public, including consumers such as Plaintiff, and his healthcare providers, were intended third party beneficiaries of the warranty.

98.    Plaintiff and his healthcare providers reasonably relied on these express representations.

99.    The Testim® manufactured and sold by Defendant did not conform to these express representations because it caused serious injury to the Plaintiff when used as recommended and directed, and these risks were not disclosed to Plaintiff or his healthcare providers.

100.  As a direct and proximate result of Defendant's breach of warranty, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

101. Plaintiff incorporates by reference each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

102. When Defendant designed, manufactured, marketed, sold, and distributed its Testim® for use by the Plaintiff, Defendant knew of the use for which it was intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling, and marketing complied with all applicable federal requirements.

103. Plaintiff and his physicians reasonably relied upon the Defendant's representations of the product's merchantable quality and that it was safe for its intended use, and upon Defendant's implied warranty, including that it was in compliance with all federal requirements.

104. Contrary to such implied warranty, Testim® was not of merchantable quality or safe for its intended use, because the product was defective, as described herein, and it failed to comply with federal requirements.

105. As a direct and proximate result of Defendant's breach of warranty, the Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT VII
## FRAUD

106.    Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though set forth fully herein.

107.    Defendant, from the time it first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Testim®, and up to the present, willfully deceived Plaintiff by concealing from him, his physicians and the general public, the true facts concerning Testim®, which the Defendant had a duty to disclose.

108.    At all times herein mentioned, Defendant conducted a sales and marketing campaign to promote the sale of Testim® and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the benefits, health risks and consequences of using Testim®. Defendant knew of the foregoing, that Testim® is not safe, fit and effective for human consumption, that using Testim® is hazardous to health, and that Testim® has a propensity to cause serious injuries to its users, including but not limited to the injuries Plaintiff suffered.

109.    Defendant concealed and suppressed the true facts concerning Testim® with the intent to defraud Plaintiff, in that Defendant knew that Plaintiff's physicians would not prescribe Testim®, and Plaintiff would not have used Testim®, if they were aware of the true facts concerning its dangers.

110.   As a result of Defendant's fraudulent and deceitful conduct, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

111.   Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

112.   From the time Testim® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendant made misrepresentations to Plaintiff, Plaintiff's physicians and the general public, including but not limited to the misrepresentation that Testim® was safe, fit and effective for human use.   At all times mentioned, Defendant conducted a sales and marketing campaign to promote the sale of Testim® and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of Testim®.

113.   The Defendant made the foregoing representations without any reasonable ground for believing them to be true.   These representations were made directly by Defendant, by sales representatives and other authorized agents of Defendant, and in publications and other written materials directed to physicians, medical patients and the

public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

114. The representations by the Defendant were in fact false, in that Testim® is not safe, fit and effective for human consumption, using Testim® is hazardous to health, and Testim® has a serious propensity to cause serious injuries to users, including, but not limited to, the injuries suffered by Plaintiff.

115. The foregoing representations by Defendant, and each of them, were made with the intention of inducing reliance and the prescription, purchase and use of Testim®.

116. In reliance of the misrepresentations by the Defendant, and each of them, Plaintiff was induced to purchase and use Testim®. If Plaintiff had known of the true facts and the facts concealed by the Defendant, Plaintiff would not have used Testim®. The reliance of Plaintiff upon Defendant's misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

117. As a result of the foregoing negligent misrepresentations by Defendant, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## PUNITIVE DAMAGES ALLEGATIONS

118. Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

119. The acts, conduct, and omissions of Defendant, as alleged throughout this Complaint were willful and malicious. Defendant committed these acts with a conscious disregard for the rights of Plaintiff and other Testim® users and for the primary purpose of increasing Defendant's profits from the sale and distribution of Testim®. Defendant's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

120. Prior to the manufacturing, sale, and distribution of Testim®, Defendant knew that Testim® was in a defective condition as previously described herein, and knew that those who were prescribed the medication would experience, and did experience, severe physical, mental, and emotional injuries. Further, Defendant, through its officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendant unreasonably subjected consumers of said drugs to risk of injury or death from using Testim®.

121. Despite its knowledge, Defendant, acting through its officers, directors and managing agents for the purpose of enhancing Defendant's profits, knowingly and deliberately failed to remedy the known defects associated with Testim® and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects

inherent in Testim®. Defendant and its agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of Testim® knowing these actions would expose persons to serious danger in order to advance Defendant's pecuniary interest and monetary profits.

122. Defendant's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendant with willful and conscious disregard for the safety of Plaintiff, entitling Plaintiff to exemplary damages.

WHEREFORE, Plaintiff respectfully requests an award of punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendant on each of the above counts as follows:

a. Compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries, healthcare costs, medical monitoring, together with all interest and costs as provided by the law;

b. Punitive and exemplary damages for the wanton, willful, fraudulent, and reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and

Plaintiff, in an amount sufficient to punish Defendant and deter future similar conduct;

c.      Plaintiff's attorney's fees;

d.      Plaintiff's costs of the proceedings; and

e.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and as to all issues.


SEEGER WEISS LLP

Date: May 2, 2014           Respectfully submitted,


_____

Scott Alan George
State Bar No. 81996
1515 Market Street – Suite 1380
Philadelphia, PA 19102
Tel: 215-564-2300
Fax: 215-851-8029
sgeorge@seegerweiss.com


Bruce W. Steckler
State Bar No. 308481
**STECKLER LLP**
12720 Hillcrest Road – Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
Fax: 972-387-4041
bruce@stecklerlaw.com


*Attorneys for Plaintiff*